UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH ERIC THOMPSON, #163650

        Plaintiff,                               CIVIL ACTION NO. 05-40293

       v.                                       DISTRICT JUDGE STEPHEN J. MURPHY III

MICHIGAN DEPARTMENT OF         MAGISTRATE JUDGE MARK A. RANDON
CORRECTIONS, ET AL.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
NICEWANDER AND JENSEN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Keith Eric Thompson, a former Michigan Department of Corrections prisoner,[1] filed this *pro se* civil rights complaint alleging violations of his constitutional rights. Presently before the court is the motion for summary judgment of Defendants Vicki Jensen and Scott Nicewander (collectively "Defendants"). (Dkt. No. 64) Plaintiff filed a response to the motion, on May 17, 2010, which failed to substantively address any of the issues raised in Defendants' motion. (Dkt. No. 71) For this reason and those set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED**.

**I. PROCEDURAL HISTORY**

This case has a lengthy procedural history yet, to date, only Nicewander and Jensen have been served. Until January 6, 2010, the matter had been pending – without service – for more than four years.

---

[1] Plaintiff was released from MDOC custody on August 26, 2009. (Dkt. No. 48)

The case originated on September 15, 2005, when Plaintiff filed this action under 42 U.S.C. § 1983 against 94 defendants in their official and individual capacities. With attachments, the complaint exceeded 300 pages in length and was deemed "unmanageable" by Magistrate Judge Pepe. (Dkt. No. 31) On October 18, 2005, Plaintiff filed a motion to amend without attaching a copy of the proposed amended complaint. (Dkt. No. 6) Plaintiff was ordered to provide a copy of the proposed amended complaint within ten days. (Dkt. No. 10) Plaintiff did not comply with the court's order until March 22, 2006 (Dkt. No. 14); however, the motion was denied as moot after Plaintiff's entire lawsuit was dismissed *sua sponte* for failure to exhaust administrative remedies. (Dkt. No. 16) On July 20, 2007, the Sixth Circuit vacated the dismissal and reinstated the case in light of *Jones v. Bock*, 127 S.Ct. 910 (2007).

After the case was reinstated, Magistrate Judge Pepe conducted an extensive review of Plaintiff's voluminous pleadings and distilled this case to five potentially viable claims. Magistrate Judge Pepe then ordered Plaintiff to file another amended complaint including these five claims, and any others that could be factually supported. (Dkt. No. 31) On May 27, 2009, Plaintiff filed a Proposed Amended Complaint that did not comply with Magistrate Judge Pepe's Order. (Dkt. No. 40) Plaintiff later claimed that he failed to receive a copy of this order, because "defendants" were interfering with his mail. (Dkt. Nos. 39 and 41) On July 22, 2009, this matter was reassigned from Magistrate Judge Pepe to the undersigned, and on July 28, 2009, a third order was entered requiring Plaintiff to submit a proposed amended complaint that complied with Magistrate Judge Pepe's previous order. This time, Plaintiff was provided with a copy of Magistrate Judge Pepe's Order and a copy of the docket history. After receiving an extension of time, on August 31, 2009, Plaintiff filed another non-conforming pleading.

Rather than direct Plaintiff to make yet another attempt to file an acceptable amended complaint, on November 18, 2009, the undersigned simply denied leave to amend as to certain portions of Plaintiff's latest amended complaint – and ordered those counts stricken. (Dkt. No. 50) Plaintiff was permitted to proceed on his remaining counts against ten defendants, two of whom – Nicewander and Jensen – now move for summary judgment.

## II. FACTS

### A. Plaintiff's allegations against Nicewander and Jensen[2]

At all times relevant to his allegations against Nicewander and Jensen, Plaintiff was confined in the segregation housing unit at the Oaks Correctional Facility ("ECF"). On March 6, 2004, at approximately 4:39 p.m., Nicewander, a Corrections Shift Supervisor, was notified by housing unit staff that Plaintiff had taken control of his top door slot. Nicewander went to the cell and conducted a cell side conversation with Plaintiff; at approximately 6:28 p.m., Nicewander accompanied Jensen, a prison nurse, to Plaintiff's cell for assessment of an injury to Plaintiff's left thumb.[3] (Dkt. No. 645, Ex. A)

---

[2] Plaintiff's response to Defendants' motion for summary judgment provides no counter-statement of facts and does not dispute any of the salient facts set forth by Defendants.

[3] By way of background, in an earlier pleading, Plaintiff detailed how his thumb was allegedly injured by Defendants Baker and Slaughter, prison guards at ECF. The injury is alleged to have occurred earlier on March 6, 2004, when Plaintiff was to be escorted from his cell in segregation to the shower. Plaintiff claims he had a medical detail allowing him to be cuffed, through the slot, from the front. However, Plaintiff was told, after Plaintiff put his hands through the food slot from the front, he would be cuffed from the back or not be taken to the shower. During a struggle that ensued after Plaintiff again put his hands through the slot from the front, Plaintiff claims Defendant Baker deliberately pushed the food slot door against his left hand, causing "a seriously bad cut on his left hand thumb." (Dkt. No. 1, ¶¶ 54-59)

Nurse Jensen examined Plaintiff twice at cell side on March 6, 2004; first at 4:39 p.m.; then again when accompanied by Nicewander. Jensen assessed an abrasion to Plaintiff's thumb (Plaintiff previously alleged it was a "seriously bad cut") and made the following medical record entries:

> **Subjective**
> 1535 [3:35 p.m.] 4-block called to state inmate injured L thumb, was bleeding and requesting healthcare. Cellside exam. Inmate making several demands to healthcare. Vague how finger was injured.
> **Objective**
> L thumb with small amount of dried blood, inmate was instructed to wash area, inmate stating healthcare should wash area. Instructed inmate he was capable to do this task. Inmate washed area. Dorsal med thumb with approx. ½" and 1/4" abrasion. No current bleeding, no deficits, moving thumb without problems. No edema noted, finger warm. Inmate became angry when told this injury was a [sic] abrasion. Antibiotic and bandaid applied. Inmate given extra supplies.
> **Assessment**
> Alteration in skin integrity secondary to injury.
>
>
> **Plan**
> Keep clean and dry. Apply antibiotic ointment and bandaid, watch for signs of infection.
> [Def Ex B(1)]; and
> **ADDITIONAL OBSERVATIONS/TREATMENTS**
> 1836 [6:36 p.m.]- 4 BLOCK CALLED Inmate taking slot hostage, requesting health care to assess thumb. On film L thumb reassessed, bandaids off. Area with dried blood no change in evaluation, had supplied to apply to area. Normal chemical agent rise.

(Dkt. No. 64, Ex. B(2)). Plaintiff does not allege a bone fracture to his thumb, edema, any post-injury infection, subsequent limitation in the use of his thumb or complication of any kind.

The claims against Nicewander and Jensen are set forth at "volume 4, Claim 4" of the amended complaint. At "Issue III," Plaintiff asserts a substantive due process claim against Nicewander. Neither Plaintiff's amended complaint nor his response to Defendants' motion provide

any factual allegations in support of this claim. (Dkt. No. 49, pp. 3-4) At Issue IV of Volume 4, Claim 4 of the amended complaint, Plaintiff asserts an Eighth Amendment deliberate indifference claim against Jensen and Nicewander "for failing to provide adequate medical care for plaintiff's medical need on March 6, 2004," and a substantive due process claim against Nicewander "for taking actions to cover up the assault and seriousness of Plaintiff's injuries." (Dkt. No. 49, p. 4) Plaintiff does not aver capacity and sets forth no claim for relief. (Dkt. No. 49)[4]

### III. ANALYSIS

**A. Standard of Review**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986); see also *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.23d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing

---

[4]Earlier versions of Plaintiff's complaint indicated Defendants were being sued in their individual and official capacities.

the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.,* 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56 (e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**B. Grounds for relief requested**

Defendants move for summary judgment on three grounds: (1) that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Nicewander and sets forth no factual allegations supporting the claim; (2) that there is no genuine issue of material fact as to Plaintiff's Eighth Amendment deliberate indifference claim and Defendants are entitled to judgment as a matter of law; and (3) that Defendants are immune from suit through both sovereign and qualified immunity. For the reasons set forth below, the undersigned finds that each of these arguments is well taken.

***1. Plaintiff failed to exhaust his administrative remedies as to Nicewander***

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94.

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy"). (Dkt. 64, Ex. C) The Policy outlines a three-step written grievance procedure.

Generally, an MDOC prisoner can simply obtain a grievance form in his housing unit and file a grievance. However, a prisoner who files an excessive number of grievances which are either "frivolous, vague, duplicative, raise non-grievable issues or contain prohibited language" are placed on "modified access" status. A prisoner on modified access is required to obtain a grievance form from the Step I Grievance Coordinator, who must provide the form if the issue the prisoner wishes to grieve is deemed meritorious and otherwise meets the criteria of the grievance policy. (Dkt. 64, Ex C, ¶¶ JJ-MM)

Plaintiff was placed on modified access status for a ninety-day period that began on February 11, 2004. (Dkt. No. 64, Ex. D) On March 6, 2004, Plaintiff submitted a request for grievance forms, seeking to file: (1) a grievance against Dr. Kilpatrick regarding a March 2, 2004 incident; (2) a

grievance against Sgt. Murphy regarding an alleged March 5, 2004 incident; (3) a grievance against prison guard Baker regarding an alleged assault on March 6, 2004; and (4) a grievance against Jensen regarding treatment rendered for an injury on March 6, 2004. Plaintiff wanted to grieve the fact that Jensen described the "laceration" to his thumb as "an abrasion" and that his thumb was not x-rayed or given surgical stitches. (Dkt. No. 64, Ex. E) Plaintiff *did not* request a grievance form regarding any improper conduct of Nicewander. After reviewing the requests submitted by Plaintiff, the Grievance Coordinator denied each of the requests. *Id.*

While the PLRA requires only that "available" remedies be exhausted – such that Plaintiff should be deemed to have exhausted all claims against the individuals for which his request for grievance forms was denied – the same is not true with regard to Nicewander. *See Kennedy v. Tallio*, No. 01-1386, 2001 WL 1176400, at *2 (6th Cir. Sept. 26, 2001)("If a prisoner has been placed on modified access to the grievance procedure *and attempts to file a grievance which is deemed to be non-meritorious*, he has exhausted his 'available' administrative remedies.") (Emphasis added). Plaintiff made no effort to utilize the applicable administrative process with respect to his claims against Nicewander. The Step I Grievance Coordinator was not given an opportunity to evaluate the propriety of any claim Plaintiff may have had against Nicewander, as required by the Policy. Further, any claim by Plaintiff that requesting a grievance form for Nicewander would have been futile lacks merit. Plaintiff concurrently submitted all of his requests for grievance forms on March 6, 2004 (the date of the incident) and, therefore, he had no basis to anticipate they would be rejected. Plaintiff's failure to request a grievance form in this instance is akin to a prisoner who is not on modified access failing to file a Step I grievance and the consequence should be the same.

Nicewander is entitled to dismissal based on Plaintiff's failure to comply with the PLRA's exhaustion requirement.

### 2. *There is no genuine issue of material fact as to Plaintiff's Eighth Amendment deliberate indifference claim against Nicewander and Jensen*

Even if Plaintiff's claims against Nicewander were administratively exhausted, his Eighth Amendment deliberate indifference claim against both Nicewander and Jensen for failing to provide adequate medical care on March 6, 2004 should still be dismissed. A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith

error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Here, the undersigned finds that the abrasion or cut to Plaintiff's thumb was not a "serious medical need."[5] *See Hill v. Dekalb Reg'l Youth Det. Center*, 40 F.3d 1176, 1187-88 (11th Cir. 1994) ("delay or even denial of medical treatment for superficial, non-serious physical conditions does constitute a [constitutional] violation."). Furthermore, even if Plaintiff could establish that Jensen willfully disregarded a significant risk that she perceived – which he cannot – Plaintiff *was* provided a medical evaluation and treatment by Nurse Jensen, rendering his dispute one improperly involving the adequacy of treatment. For these reasons, Plaintiff's Eighth Amendment claims for inadequate medical care against Nicewander and Jensen should be dismissed.

### 3. Nicewander and Jensen are immune from liability

#### a. Eleventh Amendment immunity

The Eleventh Amendment provides states immunity from suit by private citizens in federal courts. *Lawson v. Shelby County, Tennessee*, 211 F.3d 331 (6th Cir. 2000). There are only three qualified exceptions to this grant of immunity. First, the grant of immunity may be waived by the state; second Congress may, in certain constitutionally mandated circumstances, abrogate the states' immunity through statute, and third "a federal court may enjoin a 'state official' from violating federal law." *Id. at 334-335* (citing *Ex parte Young*, 209 U.S. 123 (1908)).

---

[5] Other than his *prior* complaint allegations, Plaintiff has put forth no evidence to dispute Jensen's evaluation of an abrasion; therefore summary judgment is appropriate. *Banks,* 330 F.3d at 892.

The state of Michigan has not consented to be sued for civil rights actions in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and § 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Additionally, the language of § 1983 itself does not permit suits against a state or its agencies. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).

With the exception of prospective injunctive relief, § 1983 claims against state officials in their official capacity – like Nicewander and Jensen – are also barred by the Eleventh Amendment as claims against the state itself. *Will*, 491 U.S. at 71. Here, since Plaintiff is no longer incarcerated, he has no basis to seek prospective injunctive relief. Therefore, any claims stated against Defendants in their official capacities are precluded by Eleventh Amendment immunity.

### b. Qualified immunity

"Under the qualified immunity doctrine, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006) (citing *Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005)).

In evaluating a qualified immunity defense, the court engages in a two-part analysis. The court first determines whether, on the facts alleged, the official violated a constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 194 (2001). "If the Plaintiff does not establish the violation of a constitutional or statutory right, the inquiry ends there and the official is entitled to immunity." *Perez*, 466 F.3d at 427. Under the second step, the court determines whether the right violated was "clearly established" at the time of the violation. *Id.* "The burden of showing that the right was

clearly established 'rests squarely with the plaintiff.' " *Id.* (citing *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999)). The relevant inquiry in determining if a right was clearly established is whether it would be clear to a reasonable person that his conduct was unlawful in the situation he confronted. A plaintiff must show that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* "If reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized." *Id.* "In order to determine if the law is clearly established such that a reasonable official could determine that his actions were unlawful, the court looks principally to the law of [the Sixth Circuit] and the Supreme Court." *Id.* This means that Plaintiff must show that binding authority would have alerted reasonable people in Nicewander and Jensen's position that their conduct was unlawful. *Id.* at 428. Although *Saucier* mandated a determination of these questions in sequential order, courts are no longer required to do so. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818 (2009).

Nicewander and Jensen are immune from Plaintiff's allegations that they violated the Eighth Amendment for two reasons. First, as discussed above, Plaintiff did not have a "serious medical need" and, thus, even if medical treatment was delayed or denied, there was no Eighth Amendment violation. Second, even if Plaintiff's injury was deemed a serious medical need, under the circumstances of observing Plaintiff with an abrasion (or even a serious cut as Plaintiff has *previously* alleged) to the thumb, the undersigned finds that Defendants' response (in providing bandages and antibiotic ointment) was not unreasonable – much less clearly unlawful. Therefore, to the extent that Plaintiff sues Defendants in their individual capacities, they are, still immune from suit.

**4. Plaintiff's substantive due process claims against Nicewander are not supported**

Plaintiff's substantive due process claims against Nicewander are based on Plaintiff's allegation that Nicewander took steps to "cover up the assault [by Corrections Officers Baker and Slaughter] and seriousness of plaintiff's injuries [to his thumb]. (Dkt. No. 49) Plaintiff's amended complaint alleges no facts in support of this claim and should be dismissed for this reason alone. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). However, based on Plaintiff's prior pleadings, it is clear both that Nicewander was not present at the time of the alleged assault and that Plaintiff's allegations of a "cover up" against Nicewander, a Corrections Shift Supervisor, are in reality based on Nicewander's alleged failure to do anything about the assault – in other words, an improper claim based on respondeat superior.[6]

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v Bradley*, the Sixth Circuit stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory

---

[6] Plaintiff's amended complaint makes *no allegations* as to *how* Nicewander covered up the alleged assault. However, Plaintiff's original complaint alleged that Nicewander failed "to file a critical incident report or preserv[e] the video tape of the alleged assault. *See* Plaintiff's original complaint (Dkt. No. 1, ¶ 66).

official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den.*, 488 U.S. 1007 (1989). The supervisor must have directly participated in the alleged *wrongful* conduct:

> [A] supervisory official's failure to, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."

*Id*. at 429.

Plaintiff's allegations, at best, amount to a failure to take corrective action on the part of Nicewander. There is no allegation that Nicewander approved of the alleged unconstitutional conduct of Baker and Slaughter. There is, similarly, no allegation that he encouraged the misconduct or participated in it in any way, and neither Plaintiff's amended complaint nor his response to Defendants' motion provides a single fact evincing a cover up. Accordingly, Plaintiff's claims against Nicewander should also be dismissed for this reason.[7]

## IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 64) be **GRANTED**.

---

[7] Defendants other argument that Plaintiff's substantive due process claims are not sufficiently plead is also meritorious, but need not be discussed in detail herein.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: October 1, 2010

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 1, 2010, by electronic and/or ordinary mail.*

*s/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*<br>
*(313) 234-5542*